Per Curiam.
 

 The facts of this matter are more fully set forth in a prior decision of this Court (138 AD3d 1230 [2016]). Briefly, respondent was admitted to practice by the Appellate Division, Second Department in 1984. He formerly practiced law in the City of Albany, but this Court struck respondent’s name from the roll of attorneys by 2012 order (95 AD3d 1501 [2012]) upon his plea of guilty to certain felonies. Upon the subsequent vacatur of his guilty plea by County Court, respondent applied for reinstatement (see generally Judiciary Law § 90 [5]). Petitioner opposed said application and, by June 2015 confidential order, we held respondent’s application for reinstatement in abeyance and directed petitioner to expeditiously investigate the matter and determine whether a disciplinary proceeding based on the conduct underlying respondent’s vacated convictions was warranted. Ultimately, petitioner filed a petition of charges in January 2016 and, after this Court denied respondent’s motion to dismiss the petition (138 AD3d at 1232), issue was joined and this Court appointed a Referee to hear and report.
 

 A full hearing was conducted with respondent represented by counsel. Thereafter, the Referee issued a report substantively sustaining all three charges of misconduct set forth in the petition of charges.
 
 [1]
 
 Specifically, the Referee concluded that respondent engaged in professional misconduct when he intentionally made threatening and racist telephone calls to his African-American neighbors, as he admitted to under oath during the prior criminal action. The Referee further did not find credible respondent’s current claims that he never recalled engaging in said conduct and that his prior sworn statements to the contrary were the result of, among other things, his poor hearing and the urging of his criminal defense counsel. The Referee therefore concluded that respondent cumulatively engaged in intentionally deceptive conduct that adversely reflected on his fitness as a lawyer, and was prejudicial to the administration of justice (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 8.4 [c], [d], [h]).
 

 Petitioner now moves to confirm the Referee’s report and respondent cross-moves for an order disaffirming the report, dismissing the petition of charges and immediately reinstating him to the practice of law. At respondent’s request, we have heard the parties in support of the motions and considered all materials and arguments submitted in aggravation and mitigation.
 

 In determining the appropriate resolution of the motions, we are guided by the Court of Appeals’ caveat that, in exercising our broad discretion in matters such as this pursuant to Judiciary Law § 90 (5), this Court “has the power to take a realistic view of all of the circumstances in the case in order to prevent injury to clients or to the public” (Matter of Barash, 20 NY2d 154, 159 [1967]). In this case, it cannot be ignored that the Referee’s conclusion that respondent engaged in the unjustified victimization of his neighbors on the sole basis of their race is a matter not to be taken lightly and represents a matter of legitimate concern to the public, as well as the bar. A further indication as to respondent’s future capacity as an attorney is the persuasive proof in this record supporting the Referee’s finding that respondent did not testify with candor while under oath. We find Matter of Kass (39 AD2d 352 [1972]) instructive. There, the Second Department was called upon to determine the appropriate action when a disciplinary proceeding was commenced against an attorney following the reversal of a criminal conviction on grounds unrelated to the merits. In determining that the attorney’s disbarment should continue, the Kass Court took care to note that, regardless of whether certain actions of an attorney fit “under the strict and technical rules of criminal law,” the real question to be resolved is “whether [the attorney’s] conduct demonstrates professional unfitness” (id. at 355).
 

 Here, the Referee’s report was largely based on the resolution of credibility issues and such determinations are generally accorded deference (see Matter of Schillinger, 116 AD3d 1159, 1160 [2014]; Matter of Leshaw, 254 AD2d 569, 570 [1998]). Significantly, the Referee expressly found that respondent’s hearing testimony was not credible, particularly discrediting respondent’s “claims of either mental illness or drug impairment as justifying his purported lack of recollection of the events leading to his criminal conviction.” Upon review of the record before us, we conclude that the record supports the Referee’s findings and conclusions that respondent committed the charged professional misconduct by making racist and threatening anonymous phone calls to his neighbors and then falsely claiming that he did not recollect engaging in that conduct for the purpose of covering up or minimizing his actions. Such a conclusion is clearly consistent with a 2015 evaluation of respondent by a mental health professional
 
 [2]
 
 and other proof in the record, including respondent’s various conflicting sworn statements. Inasmuch as respondent has not demonstrated in this proceeding that he has “the requisite qualifications of character and fitness for membership in the legal profession” (Matter of Kass, 39 AD2d at 355), upon consideration of all the facts and circumstances presented and in order to protect the public, maintain the honor and integrity of the profession and deter others from committing similar misconduct, we conclude that respondent’s disbarment should remain in effect.
 

 McCarthy, J.R, Garry, Egan Jr., Clark and Aarons, JJ., concur.
 

 Ordered that petitioner’s motion to confirm the Referee’s Report is granted and respondent’s cross motion to disaf-firm that Report is denied; and it is further ordered that respondent’s pending application for reinstatement is denied and respondent’s disbarment shall remain in effect.
 

 [1]
 

 . The Referee concluded that some, but not all, of the specifications supporting one of the charges were duplicative; petitioner has agreed that the duplicative specifications should be dismissed.
 

 [2]
 

 . Significantly, while the medical expert concluded that respondent did not appear to be suffering from any “current psychiatric disorder,” the expert also indicated that respondent did not appear to be completely forthcoming. In fact, the expert mentioned the real possibility that, absent proof of “a massive untreated psychiatric problem” or “severe substance problem,” respondent’s newly-claimed selective memory loss over a significant period of time was possibly an attempt to “cover-up” or minimize either his culpability or underlying psychological problems.